UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALBERT GONZALEZ, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-11665-IT |
| | * | |
| JANAYA PIERRE-MIKE, et al., | * | |
| | * | |
| Respondents. | * | |

MEMORANDUM & ORDER

September 14, 2023

TALWANI, D.J.

Petitioner Albert Gonzalez, proceeding pro se, brings a Petition for Writ of Habeas Corpus ("Petition") [Doc. No. 1] pursuant to 28 U.S.C. § 2241 alleging that the Bureau of Prisons ("BOP") failed to move him to a Residential Reentry Center in time to receive the full benefit of his one-year sentence reduction under the Residential Drug Abuse Program ("RDAP") and application of the statutory maximum of 365 days of First Step Act Credits toward early supervised release. Gonzalez asks the court to direct the Probation Office to apply his remaining First Step Act Credits toward his supervised release term or, in the alternative, to reduce the term of supervised release. Gonzalez also brings a Motion for Release from Custody [Doc. No. 8] seeking immediate release pending the resolution of his habeas petition. For the reasons set forth below, the Petition for Writ of Habeas Corpus [Doc. No. 1] is DENIED and the Motion for Release from Custody [Doc. No. 8] is DISMISSED as moot.

1

I.      **Background**

      A.      *The First Step Act and Residential Drug Abuse Program*

The First Step Act ("the Act") was enacted in 2018 with the aim of improving criminal justice outcomes and reducing the size of the federal prison population while maintaining public safety. The Act offers "incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs." 18 U.S.C. § 3632(d). These incentives include credits that inmates can earn toward early transfer to pre-release custody or supervised release. Id. § 3632(d)(4)(C). The BOP may apply a maximum of 365 days of First Step Act credits toward an inmate's early transfer to supervised release. Id. § 3624(g)(3).

In addition to credits earned through the First Step Act, BOP also facilitates other programs through which inmates can reduce their sentences, including RDAP. See 18 U.S.C. § 3621(e)(1). To successfully complete RDAP, an inmate typically participates in three stages: (1) the unit-based residential component, which takes place while the inmate is in prison and must last at least six months; (2) follow-up services during the transitional period between the unit-based component and transfer to a community-based program; and (3) community treatment services (CTS), also called transitional drug abuse treatment, which generally takes place in a residential reentry center and lasts a minimum of 120 days. 28 C.F.R. § 550.53(a); Mattingly Decl., Ex. 1 ¶¶ 8-9 [Doc. No. 9-1]. Stages 1 and 3 are mandatory for successful completion of RDAP. Mattingly Decl., Ex. 1 ¶ 10 [Doc. No. 9-1].

Upon completion of RDAP, an inmate becomes eligible for an up-to 1 year reduction in their sentence. 18 U.S.C. 3621(e)(2)(B) ("The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by

the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.").

      B.    *Gonzalez's Sentence and Petition*

      Gonzalez is currently serving a twenty-year sentence to be followed by a three-year period of supervised release. Mattingly Decl., Ex. 1 ¶ 4 [Doc. No. 9-1]. Without a reduction in sentence through either his First Step Act credits or RDAP, Gonzalez's projected statutory release date is July 26, 2025. Ex. A to Mattingly Decl. (sentencing computation data) [Doc. No. 9-2]. With the application of a one-year reduction from successfully completing RDAP, Gonzalez's projected release date becomes July 26, 2024. Id. As explained below, 311 of Gonzalez's First Step Act credits may also be applied to further reduce his sentence, making his projected release date September 19, 2023. Id.

      Gonzalez states that he enrolled in RDAP in March 2022. Petition ¶ 6 [Doc. No. 1]. In May 2022, Gonzalez began working with a case manager to prepare for his referral to a residential reentry center so that he could start the community based treatment portion of RDAP. Id. at ¶ 8. Initially, Gonzalez's release address was listed as his sentencing district in Boston, Massachusetts, but he requested that it be changed to his parents' home in Miami, Florida. Id. Probation approved the request, but the address change was ultimately denied because his case manager allegedly failed to submit a review request at the time of referral. Id. at ¶¶ 10, 18. Gonzalez was then advised to submit a new address for release, which he did on September 5, 2022, submitting the address of a friend residing in New York City. Id. at ¶¶ 19-20.

      Gonzalez alleges that he was repeatedly assured during the fall of 2022 that his request was still pending and being handled, id. at ¶¶ 21-22, 24, but in early December 2022 he learned that the Brooklyn Probation Office had never received his supervision request. Id. at ¶ 25. On

December 19, 2022, Gonzalez requested that his release address be changed back to Boston, Massachusetts, "because he was graduating RDAP on December 23, 2022, and he did not want to delay his release any further." Id. at ¶ 30. Petitioner finished the in-unit stage of RDAP on December 23, 2022. Id. at ¶ 31.

Gonzalez's case manager set up the referral to a Boston residential reentry center with a release date of February 23, 2023. Id. at ¶ 30. This gave Gonzalez five months at the residential reentry center before his projected release date on July 26, 2023. Id. On January 5, 2022, Gonzalez was told that his application for the Boston residential reentry center was accepted. Id. at ¶ 33. Despite acceptance of his application, Gonzalez was not transferred to the facility until May 29, 2023. Id. at ¶ 45.

Gonzalez's Petition [Doc. No. 1] alleges that BOP, by delaying his transfer to the residential reentry center, improperly deprived him of the full benefit of his completion of RDAP and his earned credits under the First Step Act. Gonzalez contends that his proper release date was July 27, 2023, and that "he was entitled to a minimum of four months at a halfway house to complete the Community Treatment Service" portion of RDAP with enough remaining time on his sentence to benefit from the application of the First Step Act credits he had earned. Id. At ¶ 37. Essentially, Gonzalez alleges that BOP deprived him of 54 credits to which he was otherwise entitled by not timely transferring him to a residential reentry center. Id. at ¶¶ 47-50. Gonzalez requests that this court either order him released from BOP custody on or as close to July 27, 2023 as practical, or direct Probation to credit his 54 lost First Step Act credits to his term of supervised release or reduce his term of supervised release. Id. at ¶¶ 51, 54.

BOP opposes the Petition. Answer and Return to Petition for a Writ of Habeas Corpus ("Answer") [Doc. No. 9].

## II.      Standard of Review

Pursuant to 28 U.S.C. § 2241(c)(3), a federal inmate may challenge the execution of a sentence that is allegedly in violation of the Constitution, laws, or treaties of the United States. See Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015).

The Attorney General, acting through BOP, is responsible for administering a federal inmate's sentence, including calculating release dates. See 18 U.S.C. § 3621; United States v. Wilson, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence as well as time credit. See 18 U.S.C. § 3621(b); Wilson, 503 U.S. at 335. Challenges to the execution of an inmate's sentence must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in a prisoner's district of confinement. Accord Rogers v. U.S., 180 F. 3d 349, 358 (1st Cir. 1999) (noting that challenges to BOP's application of credits, at least in jail-time context, is reviewable "by filing a habeas petition under 28 U.S.C. § 2241"); Cook v. Spaulding, 433 F. Supp. 3d 54, 57 (D. Mass. 2020) (same for First Step Act credits).[1]

## III.     Discussion

### A.      *Untimely Transfer*

Gonzalez's first ground for relief is that BOP failed to timely transfer him to pre-release custody, which resulted in the loss of 54 First Step Act credits he earned. Petition ¶¶ 47-50 [Doc. No. 1]. Because BOP did not transfer Gonzalez to the residential reentry center until May 29, 2023, he did not have sufficient time to finish the mandatory minimum 120 days in the center to graduate RDAP in time to receive the full benefit of that program's one-year reduction in his

---

[1] Courts have generally required that a petitioner exhaust all administrative remedies prior to filing a § 2241 habeas petition. See Rogers, 180 F.3d at 358. Here, BOP does not contend that Petitioner has failed to exhaust his administrative remedies, so the court treats that argument as waived.

sentence and the one-year reduction he could receive from his earned First Step Act Credits. Id. at ¶ 45. Gonzalez argues that he should be exempted from the 120 day requirement because "the Bureau of Prisons has previously exempted inmates from the 4-month CTS component of RDAP due to [First Step Act] credits [] retroactively being applied due to a change in law or interpretation of how [First Step Act] credits should be earned and applied against an inmate's sentence." Id. at ¶ 49. Accordingly, Gonzalez asks that he be immediately released from BOP custody. Id. at ¶ 51.

BOP counters that it has plenary control over the place of an inmate's detention, and that Gonzalez has not demonstrated that BOP abused its discretion in transferring him to the residential reentry center when it did. Answer 8 [Doc. No. 9]. BOP details its efforts to accommodate Gonzalez's various release address and referral requests and contends that, though Gonzalez's transfer date was later than he would have preferred, he cannot substantiate that the delay constituted an abuse of discretion on BOP's part. Id. at 1.

BOP further contends that the one-year sentence reduction under RDAP is applied to a sentence computation first, and any credits earned under the First Step Act are then applied. BOP Program Statement 5410.01 CN-1: First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (February 6, 2023) at 17. And where, as here, "an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of [First Step Act credits], the number of [First Step Act] days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e)." Id. at 18.

Gonzalez argues that BOP can exempt him from the 120 day community-based placement requirement. Motion for Release from Custody 4 [Doc. No. 8]. As support for this

claim, Gonzalez points to an affidavit submitted by Melissa Acevedo, a Supervisory Treatment Coordinator with the BOP, in a case in the District of South Dakota. See Motion for Release from Custody, Ex. A ("Acevedo Decl.") [Doc. No. 8-1]. The Petitioner in that case was seeking to be allowed to complete the community-based placement portion of RDAP while on supervised release. Id. In her declaration, Acevedo noted that in the first days of the First Step Act's implementation many inmates became immediately eligible for release from their sentence or transfer to a residential reentry facility or home confinement. Id. at ¶ 9. As a result, BOP "faced potentially competing interests" in the need to open up beds in residential reentry centers to accommodate immediate transfers and the need for RDAP inmates to complete the community-based portion of RDAP to qualify for early release under § 3621(e). Id. at ¶ 10. To alleviate this problem, BOP decided that inmates already in residential reentry facilities would receive the benefit of their First Step Act credits and early release under § 3621(e) even without completing all 120 days of the community-based treatment phase. Id. But, BOP determined that "inmates still housed at Bureau institutions would have to complete a minimum of 120 days of CTS, and their release date under § 3621(e) and application of [First Step Act credits] would be adjusted." Id.

The exemption from the 120-day requirement that BOP provided some inmates in the early days of the First Step Act's implementation is not available to Gonzalez because he was in a BOP institution at the time, not a residential reentry center. Gonzalez points to no other authority suggesting that the 120 day requirement for the community-based portion of RDAP is not mandatory.

Accordingly, where Gonzalez has not shown that BOP abused its discretion in transferring him to the residential reentry center two months later than his earliest eligibility, and

7

where successful completion of RDAP requires that Gonzalez spend 120 days in the residential

reentry center, the court declines to order his immediate release from BOP custody.

     B.    *Application of First Step Act Credits to Supervised Release*

Gonzalez's second ground for relief is that his unapplied First Step Act credits should count

toward reducing his supervised release term. Petition ¶ 54 [Doc. No. 1]. The First Step Act

provides:

> If the sentencing court included as part of the prisoner's sentence a requirement
> that the prisoner be placed on a term of supervised release after imprisonment
> pursuant to section 3583, the Director of the Bureau of Prisons may transfer the
> prisoner to begin any such term of supervised release at an earlier date, not to
> exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3). The statute provides only that First Step Act credits may be used to

begin an inmate's supervised release term early; it makes no provision for reducing the length of

the term. See Dandridge v. United States, 2023 WL 4137470, at *1 (E.D. Va. June 22, 2023);

United States v. Calabrese, 2023 WL 1969753, at *1 (N.D. Ohio Feb. 13, 2023).

Gonzalez cites two cases in support of his claim that his First Step Act credits should

reduce his supervised release term, United States v. Mincey, 2022 U.S. Dist. LEXIS 181765 (D.

N.D. Oct. 4, 2022), and Dyer v. Fulgam, 2022 WL 1598249 (E.D. Tenn. May 20, 2020). The

Mincey court, relying on Dyer, found that petitioner was entitled "to have all unused [First Step

Act] time credits applied to his term of supervised release." Mincey, U.S. Dist. LEXIS 181675 at

*5-6. In Dyer, the petitioner had accumulated 540 days of earned-time credits under the First

Step Act that he sought to have credited to reduce the term of his supervised release. Dyer, 2022

WL 1598249, at *2. The court looked to 18 U.S.C. § 3632(d)(4)(C),[2] which governs earned-time

---

[2] Section 3632(d)(4)(C) provides in its entirety: "Application of time credits toward prerelease
custody or supervised release.-Time credits earned under this paragraph by prisoners who
successfully participate in recidivism reduction programs or productive activities shall be applied
toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons

credits from participation in evidence-based recidivism reduction programs, and found its provision that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prelease custody or supervised release," to be unambiguous. Id. at *3. It concluded that the "mandatory language of the statute provides that that earned-time credits may be applied to a term of supervised release." Id.

Rejecting the reasoning of Dyer, the Calabrese court found that the use of "toward" in § 3632(d)(4)(C) "means that credits can be applied to bring 'time in prerelease custody or supervised release' closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening." Calabrese, 2023 WL 1969753, at *2. The court noted further that § 3632(d)(4)(C) instructs BOP to transfer "eligible prisoners" into prerelease custody or supervised release, citing § 3624(g), which defines "eligible prisoners" as those who "ha[ve] earned time credits under the [FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." Id. at *3. The court interpreted this language to mean that the time credits can only be used to reduce a prisoner's prison term.[3] Id.

The Calabrese court then turned to § 3634(g)(3) (quoted above) and determined that that provision does not indicate that earned time credits may be used to reduce a term of supervised release, "[r]ather it contemplated that the prisoner will be released to begin any such term of supervised release that was include[d] in a prisoner's sentence." Id. Finally, the court looked to

---

shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."

[3] Numerous other cases have reached the same conclusion. See Harrison v. Federal Bureau of Prisons, 2022 WL 17093441 (S.D. Fla. Nov. 21, 2022); United States v. Courmier, 2023 WL 5434756 (E.D. Tex. Aug. 22, 2023); Mero v. Yates, 2022 WL 17653228 (E.D. Ark. Sept. 27, 2022); Komando v. Luna, 2023 WL 310580 (D. N.H. Jan. 13, 2023); Camara v. Neely, 2023 WL 4441996 (N.D. Ala. Jun. 8, 2023); Sila v. Warden, 2023 WL 2504476 (C.D. Cal. Feb. 13, 2023).

§3624(e), which governs supervision after release from BOP custody and provides that a prisoner shall be released by BOP to the supervision of Probation, "who shall, *during the term imposed*, supervise the person released . . ." again suggesting that the term of supervised release is that imposed by the sentencing court. Id. Moreover, as a few courts have emphasized, once a prisoner is on supervised release and under Probation's jurisdiction, rather than BOP's, BOP has no authority to reduce the term of the supervised release sentence. See Pillow v. Bureau of Prisons, 2022 WL 13892877, at *7 (E.D. Ark. Oct. 21, 2022); Shiflet v. Yates, 2023 WL 2817333, at *3 (E.D. Ark. Feb. 9, 2023).

Other courts have noted that allowing earned-time credits to reduce a term of supervised release would contravene the purposes of supervised release. See Harrison, 2022 WL 17093441, at *2. "[T]he Supreme Court has held that the length of a term of supervised release cannot be reduced 'by reason of excess time served in prison,'" id. (quoting United States v. Johnson, 529 U.S. 53, 60 (2000)), because supervised release serves rehabilitative ends distinct from those served by incarceration. Id.

Finding the reasoning of these decisions persuasive, the court concludes that 18 U.S.C. § 3632(d)(4)(C) does not mandate application of FSA credits to supervised release.

In the alternative, Gonzalez requests his term of supervised release be reduced under 18 U.S.C. 3563(c). Petition ¶ 54 [Doc. No. 1]. Section 3563(c) provides that a court "may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration of the term of probation[.]" This provision does not govern supervised release, however, and the parallel statute for supervised release, 18 U.S.C. 3583(e) does not include this language. Section 3583(e) does, however, allow the court to terminate a term of supervised release and discharge the defendant released "at any time after the expiration of one year of supervised release, . . . if it

is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Accordingly, the court cannot reduce Gonzalez's supervised relief term under either statute, but Gonzalez is not precluded from requesting early termination of his supervised release at a later time.

**IV.    Conclusion**

For the foregoing reasons, Petitioner's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1] is DENIED and the <u>Motion for Release from Custody</u> [Doc. No. 8] is DISMISSED as moot.

IT IS SO ORDERED

September 14, 2023                               /s/Indira Talwani
                                                United States District Judge